UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MIGUEL J. ELMORE, )<br>)<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>*Commissioner of Social Security*, )<br>)<br>    *Defendant* ) | No. 2:11-cv-394-DBH |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the grounds that the administrative law judge erred in failing to (i) find severe impairments of memory disorder, relational disorder, or dependent personality style with antisocial features or (ii) accord substantial weight to the opinions of consulting neuropsychologist Bennett S. Slotnick, Ph.D. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 16) at 5-12. I recommend that the decision be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of a

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 22, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

seizure disorder, an anxiety disorder, and a depressive disorder, Finding 3, Record at 14; that he retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: a need to avoid work around heights and hazardous machinery and to avoid public interaction and a limitation to simple work, Finding 5, *id*. at 16; that, considering his age (20 years old, defined as a younger individual, on the amended alleged disability onset date), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 19;[2] and that he, therefore, was not disabled from June 30, 2006, his amended alleged disability onset date, through March 25, 2011, the date of the decision, Finding 11, *id*. at 19-20.[3] The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner. 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

[2] The administrative law judge erroneously stated that the plaintiff, who was born on October 17, 1985, was 14 years old on his alleged disability onset date. *See* Finding 7, Record at 19. At his hearing, the plaintiff amended his alleged onset date to June 2006, *see id*. at 31, at which time he was 20 years old. Nothing turns on the error.

[3] The plaintiff was insured, for purposes of SSD benefits, through June 30, 2006. *See* Finding 1, Record at 14. Hence, to be eligible to receive SSD benefits, he was required to demonstrate that he was disabled on or before that date. *See, e.g., Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured . . .; however, eligibility for SSI benefits is not dependent on insured status.").

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Failure To Find Severe Impairments

The plaintiff first complains that the administrative law judge erred in failing to find severe impairments of (i) a memory disorder, (ii) a relational disorder, and (iii) dependent personality style with antisocial features. *See* Statement of Errors at 5-12. He points to the following evidence with respect to any memory disorder:

1. Dr. Slotnick's diagnosis, in a report of a neuropsychological consultation dated April 13, 2005, that the plaintiff had a memory disorder attributable to cognitive and psychosocial problems, with an immediate memory index of 59, in the deficient range, and significant difficulty with the regulation and storage of new information. *See id*. at 5, 7; Record at 543;

2. The diagnosis of William Nelson, M.D., and Zachary D. Smith, MS, PA-C, in a report of a psychiatric evaluation at the Capital Community Clinic dated November 24, 2008, of a "rule-out" cognitive disorder, and their notation that the plaintiff's "[m]emory is impaired,

particularly longer-term details, although some short-term items are off as well." Statement of Errors at 6-7 (quoting Record at 796));[4]

    3.    The notation of Shelly Barnett, PMH-NP, in a report of a psychiatric evaluation performed on February 11, 2009, that the plaintiff had apparent lapses in his recent and remote memory. *See id*. at 6; Record at 968; and

    4.    A diagnosis by Kevin H. Mullarky, M.D., on April 5, 2005, of a history of a learning disorder, not otherwise specified. *See* Statement of Errors at 7; Record at 535.

With respect to any relational disorder or personality disorder, the plaintiff points to:

    1.    Dr. Slotnick's diagnoses of relational problems, NOS [not otherwise specified], and personality style with dependent and antisocial features, as well as his findings that the plaintiff was "plagued by feelings of being broken, flawed and defective[,]" with "little overt conscious or regret with regard to engaging in behaviors which are hurtful to others and which would be identified as antisocial[,]" and that he "tend[ed] to react with rebellion and anger towards real and symbolic authority figures." Statement of Errors at 6-7 (quoting Record at 544);

    2.    Dr. Nelson's and Mr. Smith's diagnosis of a personality disorder with Cluster B traits and of "rule-out" impulse control disorder. *See* Statement of Errors at 7; Record at 797; and

    3.    A diagnosis by Line Pelletier, PA, in a discharge summary from an inpatient mental health hospitalization from May 18-22, 2006, of antisocial traits. *See* Statement of Errors at 7; Record at 605.

---

[4] I have corrected both the plaintiff's misidentification of Dr. Nelson as "William McDonald, MD," and an error in the quotation.

The plaintiff argues that the failure to identify these as severe impairments was not harmless, given Dr. Slotnick's findings that the plaintiff's memory and learning disorders caused him to have significant difficulty with the regulation and storage of new information, and his personality and relational disorders caused him to engage in antisocial and impulsive behaviors, have difficulty maintaining mutual and reciprocal peer relationships, and have a tendency to react with rebellion and anger toward real and symbolic authority figures. *See* Statement of Errors at 8; *see also* Record at 543-45.

I agree that the administrative law judge erred in failing even to consider whether the plaintiff had a severe memory or personality impairment. *See* Record at 14. Nonetheless, "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim." *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010).

With respect to the plaintiff's personality or relational disorders, the error is harmless in that the administrative law judge adopted the mental RFC opinions of two Disability Determination Services ("DDS") nonexamining consultants, Thomas Knox, Ph.D., and David R. Houston, Ph.D., who found that the plaintiff had severe medically determinable impairments of personality disorder, NOS, as well as mood disorder, NOS, *see* 815, 819, 1019, 1021, and took the effects of the personality disorder into account in deeming the plaintiff able to interact appropriately with co-workers and supervisors but not with the public, *compare* Finding 5, *id*. at 16 *with id*. at 828, 1030.

With respect to any cognitive, memory, or learning disorder, the error is harmless in that, while neither Dr. Knox nor Dr. Houston found any such severe medically determinable

5

impairment, both took into account the plaintiff's memory/concentration difficulties in finding him able to understand and remember at least simple instructions and carry out simple tasks in a normal schedule. *See id*. at 828, 1030. The administrative law judge accepted those restrictions implicitly when he deemed the plaintiff limited to simple work. *See* Finding 5, *id*. at 16.

Furthermore, the conclusion of Drs. Knox and Houston, which was necessarily adopted by the administrative law judge, that the plaintiff had not demonstrated that he suffered from a medically determinable severe memory impairment (or cognitive or learning disorder impairment) is supported by substantial evidence. Although Dr. Slotnick, a one-time examining consultant, diagnosed the plaintiff with a memory disorder (attributable to neurocognitive and psychosocial problems), *see id*. at 545, Dr. Mullarky did not diagnose a learning disability, but rather noted a history of such, *see id*. at 535, Ms. Pelletier noted memory symptoms but did not diagnose a cognitive/memory disorder, *see id*. at 968, and, in Dr. Nelson and Mr. Smith did not diagnose a cognitive disorder, but rather a need to "rule out" the existence of such a disorder, *see id*. at 797; *see also Coleman v. Astrue*, Civil No. 09-8-P-H, 2009 WL 3517583, at *2 (D. Me. Oct. 29, 2009) (rec. dec., *aff'd* Nov. 17, 2009) ("An entry ruling out a particular ailment or condition is *not* a diagnosis of that ailment or condition.") (citation and internal punctuation omitted) (emphasis in original). In addition, even had Ms. Pelletier or Mr. Smith diagnosed a cognitive or memory disorder, neither is an "acceptable medical source" for purposes of demonstrating the existence of a medically determinable impairment. *See, e.g*., 20 C.F.R. §§ 404.1513(a), 416.913(a).

Beyond this, other substantial evidence of record calls into question the existence of a memory, cognitive, or learning disorder, including:

1. Testing performed in high school that tended to show that the plaintiff had average learning/cognitive ability, although he was noted to have difficulty recalling complex verbal information. *See* Record at 379, 394, 396;

2. A notation by Ms. Pelletier, included in the records of the plaintiff's Spring Harbor Hospital admission on May 18, 2006, that she had been told by his then-primary care provider, Scott Richards, PA-C, that the plaintiff had "no known memory issues or lapses" and would "claim he cannot recall certain events perhaps because of symptoms of temporal lobe epilepsy[,]" but when "confronted about his struggles with honesty, . . . [would] eventually tell [Richards] what [was] going on in his life." *Id*. at 604;

3. A notation by Ms. Pelletier that the plaintiff, who had failed to adhere to his medication regime for seizures, was "thoroughly invested in applying for disability" and perhaps malingering for disability reasons. *Id*.; and[5]

4. A discharge summary by Tatyana Karchov, M.D., in connection with a mental health hospitalization at Mid Coast Hospital from May 5-8, 2009, finding, on mental status examination, that the plaintiff demonstrated "fair recent and remote memory." *Id*. at 872.

The plaintiff, hence, falls short of demonstrating that the Step 2 omissions of which he complains could have been outcome-determinative.

### B. Failure To Give Substantial Weight to Slotnick Opinions

The plaintiff lastly argues that the administrative law judge erred in failing to give substantial weight to the opinion of Dr. Slotnick that he could only perform work in a

---

[5] The plaintiff does not separately challenge the findings of the administrative law judge that (i) he had a long history of noncompliance with the medication regime prescribed for his seizures, *see* Record at 17, (ii) hospital records indicated that he experienced seizure activity when he was noncompliant, *see id*. at 18, (iii) the record contained evidence that he had attempted to use his seizure disorder to qualify for disability benefits, *see id*., and (iv) his noncompliance with medications negatively impacted his credibility, *see id*. *See also id*. at 1244 (June 4, 2010, note by neurologist David Burke, M.D., that he had told the plaintiff's caseworker that if the plaintiff continued to be "lackadaisical" and "uncompliant," Dr. Burke would be unwilling to continue treating him for his idiopathic generalized epilepsy).

7

competitive work environment if he had (i) a supportive work environment with little to no conflict, (ii) a mentor, and (iii) assistance for employment. *See* Statement of Errors at 10; Record at 544. The plaintiff points out that Dr. Slotnick, a neuropsychologist, is a specialist in his field and argues that his opinion is consistent with those of other treating sources, including Dr. Mullarky, Ms. Pelletier, Mr. Smith, Dr. Nelson, and Ms. Barnett. *See* Statement of Errors at 10-11. He faults the administrative law judge for failing to discuss the Slotnick opinion at all, in violation of his obligation to provide "good reasons" for the weight given to a treating source opinion, and for relying on the Knox and Houston opinions when neither Dr. Knox nor Dr. Houston discussed or mentioned Dr. Slotnick's opinions. *See id.* at 11.

Nonetheless, the authorities on which the plaintiff relies, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) and *Soto-Cedeño v. Astrue*, 380 Fed. Appx. 1 (1st Cir. 2010), describe an administrative law judge's obligations with respect to the opinions of *treating sources*. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (certain opinions of treating sources merit controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the medical record; adjudicators will "always give good reasons in our notice of determination or decision for the weight [they] give [a claimant's] treating source's opinion"); *Soto-Cedeño*, 380 Fed. Appx. at 3-4 (administrative law judge failed to supply supportable reasons for rejecting treating source opinion in accordance with 20 C.F.R. § 404.1527(d)(2), necessitating reversal and remand).

The plaintiff's counsel conceded at oral argument that Dr. Slotnick, a consultant who performed a one-time examination of the plaintiff, was not a treating source. *See, e.g.*, 20 C.F.R. §§ 404.1502, 416.902 (defining a "treating source" as "[a claimant's] own physician, psychologist, or other acceptable medical source who provides [him or her], or has provided

8

[him or her], with medical treatment and evaluation and who has, or has had, on ongoing treatment relationship with [the claimant]."); *Smythe v. Astrue*, No. 2:10-cv-251-GZS, 2011 WL 2580650, at *5 (D. Me. June 28, 2011) (rec. dec., *aff'd* July 21, 2011) ("A onetime examining consultant is not a 'treating source' and therefore is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons."). He argued, however, that it was reversible error still for the administrative law judge to ignore the Slotnick opinion, which he characterized as more detailed and consistent with the record than the opinions of Drs. Knox and Houston, who also are not treating sources.

Yet, as counsel for the commissioner rejoined, a "failure by the ALJ [administrative law judge] to articulate or explain the weight given to the reports of the examining or consultative physicians can be harmless error." *Smythe*, 2011 WL 2580650, at *5 (citation and internal quotation marks omitted). That is true in this case, he persuasively argued, given that:

1. Dr. Slotnick's opinion, dated April 13, 2005, predates the plaintiff's amended alleged onset date of disability, June 2006, by more than a year, diminishing its probative value. *See, e.g., Pierce v. Astrue*, No. 1:10-cv-242-JAW, 2011 WL 2678919, at *4-*5 (D. Me. July 7, 2011) (rec. dec., *aff'd* July 29, 2011) (Decision Review Board did not err in affirming finding that claimant's impairments did not significantly limit his functioning for at least 12 months prior to his date last insured when, *inter alia*, treating source opinion supportably was construed as reflecting claimant's condition as of date of opinion, 2007, rather than date last insured, 1994).

2. While Dr. Slotnick discussed memory problems, *see, e.g.*, Record at 543, the administrative law judge makes an allowance for problems of that nature in his RFC determination, *see* Finding 5, *id.* at 16.

9

3.      The Slotnick opinion, which is not a mental RFC opinion, does not provide meaningful insight into precisely how the plaintiff's mental impairments would impose work-related limitations. *See id*. at 544 (noting that "[a]ssistance could also be provided in terms of employment, which could offer an enhanced sense of self[,]" but not specifying types of assistance).

4.      While neither Dr. Knox nor Dr. Houston mentioned Dr. Slotnick by name or discussed his findings, both of them made note of records of a hospitalization at Southern Maine Medical Center in April 2005. *See id.* at 824, 1026. Dr. Slotnick's report is among that set of records, *see id*. at 540-45, and, thus, it is reasonable to assume that Drs. Knox and Houston reviewed it.[6]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

---

[6] For that reason, the plaintiff also fails to make a persuasive case that the administrative law judge erred in relying on the Knox and Houston opinions in the absence of any mention of Dr. Slotnick. *See* Statement of Errors at 11.

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 27th day of June, 2012.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
